J-S20031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: I.M.B., A MINOR | : IN THE SUPERIOR COURT OF |
| | :          PENNSYLVANIA |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| APPEAL OF: I.B., FATHER | :       No. 232 WDA 2022 |

Appeal from the Order Entered February 15, 2022
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-0000188-2021

BEFORE:  NICHOLS, J., MURRAY, J., and KING, J.

MEMORANDUM BY KING, J.:          **FILED: SEPTEMBER 2, 2022**

Appellant, I.B. ("Father"), appeals from the order entered in the Allegheny County Court of Common Pleas, Orphans' Court, which granted the petition of Children, Youth and Families ("CYF") for involuntary termination of Father's parental rights to his minor child, I.M.B. ("Child").  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> [Child] was born [in January 2020] to [M]other and [Father], who signed an acknowledgement of paternity…. Mother had involvement with CYF dating back to 2014, and [M]other had her rights involuntarily terminated to three older children.  …[O]ne-day after his birth, CYF obtained an emergency custody authorization for [Child].  Upon release from the hospital…, [Child] was placed into foster care.
>
> Father was permitted to visit the child once each week, supervised.  [Child] was adjudicated dependent on January 29, 2020, at which time [F]ather stipulated that his current goals were to comply with anger management, comply with

drug and alcohol treatment, and resolve his criminal matters. Father also stipulated that he was not in compliance with these goals at that time, as the agency was already open on another child between [F]ather and [Mother] when [Child] was born.

At the adjudication hearing, the findings of fact indicated that [F]ather had not yet attended or completed a batterers' intervention program ("BIP") or anger management program, that he had not completed a [Pennsylvania Organization for Women in Early Recovery ("POWER")] drug and alcohol assessment, that he had attended only two (2) of a possible twenty-nine (29) visits with his older child, who was already dependent and in out of home placement at the time, and that [F]ather was currently staying with friends. The court ordered [F]ather to attend coached visitation, participate in anger management programming, and resolve his criminal issues.

At the permanency review hearing in May 2020, the court made findings that [F]ather did not participate in the proceeding despite being notified by phone and mail. The court also made findings that [F]ather did not complete his POWER assessment, that he had a bench warrant for failure to comply with his criminal court obligations, and that he was not consistently visiting [Child]. At the review hearing in September 2020, the court again made findings that [F]ather had not made any progress towards his goals. With particular attention to [F]ather's visitation goal, [the] court found that "he has been offered coached visitation multiple times but has been discharged and unable to visit consistently. He has not visited consistently throughout the history of the case. He had continued to not attend with any consistency and when he attended, he needs prompting about feeding and diaper changes. He was contacted by [the foster care agency] on June 17 to schedule in person visits, he did not respond but contacted his caseworker [on] July 29 [regarding] visits which were set up and he has not attended consistently." The court also noted that he did not complete a drug and alcohol evaluation, had unresolved criminal charges, and was residing with his father.

By December [2020], this court found that [F]ather still had not addressed his goals. At the permanency review hearing

on December 15, 2020, [F]ather was again ordered to address the goals related to anger management programming, drug and alcohol evaluation and treatment, resolving his criminal matters, and visitation with his child. The court ordered a reduction in [F]ather's supervised visits to once weekly in person and once weekly virtual, with twenty-four hours confirmation, on March 17, 2021. At that time, [F]ather continued to have unresolved criminal charges and was residing with his mother.

On June 16, 2021, the court again ordered [F]ather to follow up with a POWER evaluation and follow any recommendations, including participation at Mon Yough [Community Services], to continue random urine screens, and participate in visitation once a week virtually and once a week in person and supervised, which could be in [F]ather's home if he had housing that was appropriate for CYF to inspect.

On September 17, 2021, CYF filed a petition to involuntarily terminate [F]ather's parental rights with respect to [Child] pursuant to 23 Pa.C.S. §§ 2511(a)(2), (5), (8), and (b). The court reduced [F]ather's visits to once weekly, supervised, at the foster care agency office on November 9, 2021.

Dr. Patricia Pepe, the court appointed evaluator, conducted an individual assessment of [F]ather, an interactional evaluation of [F]ather and [Child], and an interactional evaluation of the foster mother and [Child] on November 9, 2021. At the time of the termination proceedings, [Child] was two years old and had resided in the care of his foster home since he was two days old. At no time during the pendency of this case did [F]ather have [Child] returned to his care. Furthermore, [F]ather's visits with [Child], which were inconsistent, remained supervised throughout the two years the child was in care.

(Orphan's Court Opinion, 3/28/22, at 2-6) (internal citations and footnotes omitted).

The court held termination hearings on January 31, 2022 and February 10, 2022. Following the hearings, the court granted CYF's petition and

terminated Father's parental rights to Child. On February 23, 2022, Father timely filed a notice of appeal and a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Father raises the following issues for our review:

> Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (8)?

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Father's parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S. § 2511(b)?

(Father's Brief at 6).

In his issues combined, Father argues that CYF did not present clear and convincing evidence that he was unable or unwilling to render parental care. Father avers that he complied with the court's orders to seek out anger-management therapy and achieve sobriety. He insists "that CYF's inability to verify Father's compliance did not mean that said compliance did not occur." (*Id.* at 20). He emphasizes that CYF did not present evidence that Father still smoked marijuana, or that smoking marijuana impacted his ability to care for Child. Father also contends that CYF did not present "evidence of any incidents of intimate partner violence for over one year." (*Id.*) Father highlights that he secured appropriate housing, stable employment, and has never presented safety concerns when caring for Child. Father further asserts that Child loves Father and is benefitted by Father's affection. Father

concludes the trial court erred in finding that CYF met the burden of proof for termination and that this Court must reverse the order terminating his parental rights. We disagree.

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without

hesitation, of the truth of the precise facts in issue. ***In re J.D.W.M.***, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191-92 (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

CYF filed a petition for the involuntary termination of Father's parental rights to Child on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable

period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only

- 7 -

> if the court determines that the parent's conduct warrants termination of …his parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re Z.P., supra* at 1117. "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 1117-18. Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P., supra* at 1118.

Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of …his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of CYS supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of CYS services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his … rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the

- 10 -

child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [himself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of …his ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with …his physical and emotional needs.

*In re B., N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his… child is converted, upon the failure to fulfill his… parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

Instantly, the court found that CYF provided clear and convincing evidence to establish grounds for termination pursuant to Section 2511(a)(2), (5) and (8). The court acknowledged that Father was able to accomplish some of his goals during the pendency of this case. Specifically, the court noted

that Father secured housing, became employed, refrained from marijuana use and did not have any outstanding criminal matters for a period of four to five months prior to the termination hearing. Nevertheless, the court found:

> [F]ather's affirmative steps to try and remedy the conditions that led to the removal were much too little, much too late. Father had the better part of two years, while his young son was in foster care, to remedy the issues that led to the removal. The evidence presented supported the fact that the child had been in care for two years and Father either could not or would not remedy the conditions within that time frame.

(Orphans' Court Opinion, 3/29/22, at 15).

The record supports the court's findings. Erika Allegrucci, the foster care caseworker, testified that Father consistently failed to visit with Child. Out of 89 scheduled, in-person visits, Father only attended 19. An additional 144 virtual visits were scheduled, but Father only attended 54. In response to Father's failure to maintain regular visitation, the court decreased the number of visits he was entitled to from three times a week to one visit per week. During the visits that Father attended, Ms. Allegrucci noted Father regularly fell asleep. Additionally, Father failed to attend any of Child's medical appointments, and failed to participate in coached visitation with Child despite multiple CYF referrals.

Further, Aaron Kasden, the CYF caseworker assigned to this matter, testified that Father did not substantially or timely, comply with his court-ordered goals. The court ordered Father to seek mental health treatment to address anger management and intimate partner violence. At the time of the

termination hearing, CYF had received no record of Father seeking or completing any programs to accomplish this goal. The court also ordered Father to become sober. In that pursuit, the court directed Father to complete a POWER assessment, follow the assessment recommendations, and participate in random urine screenings. CYF made four referrals to POWER on Father's behalf, but Father did not meet with POWER until July 2021. Even after Father met with POWER, there is no record of Father participating in POWER's recommended treatment or working with his POWER-appointed mentor.

Additionally, Mr. Kasden noted that Father did not secure suitable housing until over a year after Child was born despite being offered in-home services, housing referrals and rental assistance from CYF to help find appropriate housing. Only after CYF filed the instant termination petition did Father obtain his current housing, which CYF assessed as appropriate on January 18, 2022.

Although Father asserts that his failure to appear for treatment and scheduled visitation was due to difficulty securing transportation, we note that CYF provided Father bus tickets for this purpose. Additionally, Father did not attend 90 virtual visits where transportation was not an issue. Father also insists that he has not smoked since November 2021, and addressed his anger management needs independent of CYF services. However, Father failed to provide any documentation of his alleged completion of these goals.

Additionally, Father's random urine screens indicate continued substance use. Father also failed to provide updated contact information to CYF. As such, despite Father's recent efforts in working towards some of his court-ordered goals, the court was within its discretion to conclude that Father failed to make adequate progress in a reasonable time frame and is unable or unwilling to remedy the conditions that necessitated Child's removal in the near future. **_See In Interest of Lilley, supra._** Accordingly, we see no error in the court's determination that termination was proper under Section 2511(a)(2). **_See In re Z.P., supra_**.

Further, Child has not been in Father's care since his birth in January of 2020, which is well beyond the six and twelve month thresholds set forth in Sections 2511(a)(5) and (8), respectively. During that time period, Father failed to attend scheduled visitation consistently and never progressed to unsupervised visitation. Additionally, Father's visitation was reduced by the court throughout the pendency of this case due to his failure to attend scheduled visits. Ms. Allegrucci testified that she regularly reached out to Father to facilitate visitation and inquire about any issues, but Father often failed to confirm visits or answer phone calls. Further, despite CYF issuing Father numerous referrals to services that would aid him in meeting his court ordered goals, Father made minimal or no progress on these goals until recently. Therefore, we discern no error in the court's determination that termination was proper under Sections 2511(a)(5) and (a)(8). **_See In re B.,_**

***N.M., supra***; ***In re A.R., supra***.

With respect to Section 2511(b), the record supports the court's finding that there is no parent-child bond between Father and Child. After conducting an interactional evaluation of Father and Child, Dr. Pepe concluded that Child had no attachment with Father. Dr. Pepe noted that Child cried when he was separated from his foster mother at the start of the evaluation with Father and was largely unresponsive to Father throughout. Regarding her interactional evaluation of Child and foster mother, Dr. Pepe noted that Child called his foster mother "mommy" and seemed happy and engaged during the evaluation. Dr. Pepe testified that Child's primary attachment was to his foster mother, and that it would be "psychologically devastating" to remove Child from her care. (***See*** N.T. Termination Hearing, 2/10/22, at 10-11). Ms. Allegrucci confirmed that Child turns to his foster family "when he is hurting or sick, when he would like comfort or if maybe another person comes into the room that he's not aware of." (N.T. Termination Hearing, 1/31/22, at 69-70). Therefore, we discern no error in the court's determination that termination is in Child's best interest under Section 2511(b). ***See In re C.P.***, ***supra***; ***In re Z.P.***, ***supra***. Accordingly, we affirm the order terminating Father's parental rights to Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/2/2022